UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

FILED
JAMES J. WALDRON, CLERK
MAY 14 2015
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

IN RE:                                             :

LocalBizUSA, Inc.                                  :      CASE NO. 09-20654 (GMB)

                Debtor                        :

                                              :

LocalBizUSA, Inc., by and through        :       ADV. NO. 14-1454
  John W. Hargrave, Chapter 7 Trustee
                                                   :
                Plaintiff

v.                                                 :

Thomas J. Freund, Patrick Giglio, North   :       OPINION
American Marketing Tours, Inc.,
Intermediate Consulting and Management    :
Group, LLC, Unique Billing Solutions, LLC,
Jeffrey Rosenberg, Louis Freedman, and    :
John Does 1-10, individuals
                                                   :
                Defendants
                                                   :

APPEARANCES:     Edmond M. George
                 Obermayer, Rebmann, Maxwell & Hippel
                 1617 JFK Boulevard
                 Suite 1900
                 Philadelphia, PA 19103
                 Attorney for LocalBizUSA, Inc., by and through
                   John W. Hargrave, Chapter 7 Trustee

                 Christopher J. Stanchina, Esq.
                 222 New Road, Suite 206
                 Linwood, NJ 08221
                 Attorney for Defendant Thomas J. Freund

Andrew J. Kelly, Esq.
Kelly & Brennan, P.C.
1011 Highway 71, Suite 200
Spring Lake, NJ 07762-2030
Attorney for Defendants Unique Billing Solutions, LLC
and Jeffrey Rosenberg

---

I.   **INTRODUCTION**

Before the Court are the Motions to Dismiss filed by Thomas A. Freund and other Defendants. The Motions seek to dismiss the adversary complaint filed by John W. Hargrave, the Chapter 7 Trustee (the "Trustee") in the underlying Chapter 7 Bankruptcy Case, *In re LocalBizUSA, Inc.* For reasons elaborated upon below, the Motion is DENIED in part, and GRANTED in part.

II.  **FACTS and BACKGROUND**

On April 28, 2009, creditors of LocalBizUSA, Inc. ("LocalBizUSA") filed an involuntary petition in Camden, New Jersey. On May 21, 2009, LocalBizUSA commenced a voluntary Chapter 11 proceeding in Newark, New Jersey and, on June 15, 2009, Judge Gambardella entered a consent order consolidating the Newark matter into the pending case in Camden. An order for relief was entered on June 24, 2009 and the case was converted to Chapter 11.

In November 2009, LocalBizUSA, Unique Billing Solutions LLC ("UBS"), North American Marketing Tours, Inc. ("NAMT"), Intermediate Consulting and Management Group LLC ("ICMG"), the Buono Creditors,[1] and the Pearce Creditors[2] entered into a Settlement Agreement under which LocalBizUSA agreed to file a Plan of Reorganization that would encompass the Settlement Agreement's terms. According to the Trustee, the relevant individual officers of these entities are: (1) Patrick Giglio ("Giglio"), the president of LocalBizUSA, (2) Jeffrey Rosenberg ("Rosenberg"), a principal of UBS, (3) Louis Freedman ("Freedman"), a principal of both NAMT and ICMG, (4) Frank Cahill ("Cahill"), a member or person in control of UBS and NAMT, and (5) Thomas J. Freund ("Freund"), the CFO of LocalBizUSA and a principal in control of both NAMT and ICMG. The Trustee asserts that Freund was in a

---

[1]  The phrase, "the Buono Creditors," refers to individual creditors Barbara Buono, Lawrence Kienle, Anthony Bruno and Joseph Zeccaradi.
[2]  The phrase, "the Pearce Creditors," refers to individual creditors John Primallis, Lenny Salerno, Jack Shaffer, and Daniel Shaffer.

fiduciary position with respect to LocalBizUSA and its creditors because Freund had the duties of writing checks, clearing payment obligations, and otherwise controlling LocalBizUSA's accounts.

LocalBizUSA filed its Second Modified Plan on April 14, 2010 and that Plan—which incorporated the Settlement Agreement—was confirmed on June 3, 2010. The Trustee asserts that NAMT was the disbursing agent under the Plan and that Freund was the individual who performed the disbursing duties. The Plan designated eight (8) classes of claims. Class One consisted of administrative claims; Class Two consisted of priority tax claims; Class Three consisted of the secured claim of NAMT; Class Four consisted of the secured claim of UBS; Class Five consisted of the unsecured claims of the Buono Creditors; Class Six consisted of the unsecured claims of the Pearce Creditors; Class Seven consisted of allowed general unsecured claims; and Class Eight consisted of the equity interest holders of LocalBizUSA. The three unsecured classes of the Buono Ceditors, Pearce Creditors, and general unsecured creditors were to be paid on a pro rata basis until a certain maximum dollar amount for each was reached, however these claims were not fully satisfied prior to the case's conversion. Because LocalBizUSA did not complete its Plan obligations, the case was subsequently converted to Chapter 7 on October 9, 2012. The Trustee was thereafter appointed on October 11, 2012.

The dispute before the Court involves conflicting interpretations of a provision in the Settlement Agreement. The Plan specifically states under Section III, "Treatment of Miscellaneous Items," that LocalBizUSA specifically assumes all of its obligations under the Settlement Agreement and that, "in the event of a conflict between the terms of [the] Plan and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control." The relevant provision of the Settlement Agreement, Section 3.1, provides:

> [LocalBizUSA] shall remain unconditionally liable to pay the Budgeted Expenses, including without limitation to [NAMT/ICMG] weekly in the amount of $37,500 and to UBS weekly in the amount of $22,500 in accordance with the Cash Collateral Orders and under their respective marketing, sales, and/or service contracts.

NAMT and ICMG were allegedly required to present 750 new customers per week in order to earn this $37,500 per week payment, which was provided as a Budgeted Expense in

3

Exhibit "A" to the Plan.[3] According to the Trustee, NAMT and ICMG failed to reach the 750 customer-per-week requirement. Nontheless, LocalBizUSA continued to pay $37,500 per week to NAMT and ICMG. The Trustee calculates that, at a contractual rate of $50 per new customer, and with an alleged number of only 40,684 new customers presented during the relevant time period, NAMT and ICMG should have only received payments amounting to a maximum of $2,034,200. By continuing to pay $37,500 per week, LocalBizUSA instead paid NAMT and ICMG a total of $2,400,000—resulting in an alleged overpayment of $365,800.

The Trustee makes substantially similar assertions with respect to UBS. Allegedly, UBS was owed a fee of $5 per customer billed or presented, and the Trustee argues UBS presented or billed 311,665 customers pursuant to the Plan and Settlement Agreement. Accordingly, the Trustee calculates that UBS should have received no more than $1,558,325 from LocalBizUSA's estate. However, LocalBizUSA allegedly continued to pay UBS the rate of $22,500 per week as contemplated in the Settlement Agreement, for a total of $2,043,000. The Trustee therefore argues LocalBizUSA made overpayments totaling $484,875 to UBS.

Accordingly, on May 6, 2014, the Trustee filed an Adversary Complaint (the "Complaint") on behalf of LocalBizUSA against Freund, Giglio, Rosenberg, Freedman, NAMT, UBS, and ICMG (collectively, "Defendants"). The six counts alleged in the original Complaint were as follows: (Count I) Recovery of Post-petition Transfers under § 549 of United States Code, Title 11 (hereinafter, the "Bankruptcy Code" or the "Code"); (Count II) Conspiracy; (Count III) Breach of Fiduciary Duty; (Count IV) Fraudulent Conveyance Under New Jersey's Fraudulent Transfer Act, N.J.S.A. § 25:2-25; (Count V) Common Law Fraud; and (Count VI) Breach of Contract. The Trustee asserts that the Defendants either entered into a common scheme or conspiracy to defraud LocalBizUSA and its creditors or, alternatively, breached their contractual and/or fiduciary duties in making and concealing such overpayments because, allegedly: the Defendants were fiduciaries at all relevant times, LocalBizUSA was insolvent at all times relevant to the Complaint, and Defendants actively concealed the existence of the alleged overpayments from parties in interest by failing to file required financial reports.

Freund defends the payments made by LocalBizUSA by noting that Section 3.1 of the Settlement Agreement, quoted above, dictates that LocalBizUSA was "unconditionally liable" for the aforementioned weekly payments. Meanwhile, the Trustee alleges that Section 3.1 of the

---

[3] Exhibit "A" to the Plan only names ICMG, however the Trustee asserts that NAMT was also receiving these payments and was also subject to the described customer requirements along with ICMG.

4

Settlement Agreement, by virtue of incorporating the terms of prior cash collateral orders, only permits payment to NAMT, ICMG and UBS to the extent supported by contract to the extent NAMT, ICMG, and UBS adhered to the minimum customer quotas contained in the Settlement Agreement. Only after Freund was approached by a creditor's attorney about the discrepancy between customer quotas and disbursed payments was there any allegation that Freund and his fellow Defendants deviated from Freund's initial interpretation of the Plan and Settlement Agreement.

Freund moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure,[4] arguing that (1) the payments at issue occurred in accordance with the express terms of the Settlement Agreement, (2) alternatively, the Settlement Agreement is vague and ambiguous, in which event there can be no viable claims for fraud, fraudulent transfer, breach of duty or conspiracy, and (3) the fraud-based allegations are not pled with sufficient particularity to survive Rule 12(b)(6) scrutiny. Freund's motion did not specifically address the Trustee's breach of contract claim.

After an August 26, 2014 hearing on the matter, this Court directed the Trustee to re-plead certain claims, particularly the conspiracy and fraud-based counts, by September 15, 2014. The Trustee failed to do so, instead seeking an extension of time to replead and eventually filing an Amended Complaint on September 26, 2014. The Trustee's Amended Complaint, which is now the subject of the instant motions, dropped the Code § 549 count[5] and added a negligence count. In turn, the counts now asserted by the Trustee are as follows: (Count I) Conspiracy against all Defendants; (Count II) Breach of Fiduciary Duties against NAMT, Cahill, Rosenberg, Giglio, Freedman and Freund; (Count III) Recovery under the New Jersey Fraudulent Conveyance Statute against NAMT, ICMG, and UBS; (Count IV) Common Law Fraud against

---

[4] Federal Rule of Civil Procedure 12(b)(6) is incorporated into the instant Adversary Proceeding via Federal Rule of Bankruptcy Procedure 7012.

[5] The Trustee removed the Code § 549 Count after the Court indicated at the August 26, 2014 hearing that recovering under § 549 was not possible once a plan had been confirmed because estate property had revested in LocalBizUSA following confirmation and recovering under § 549 requires that *property of the estate* was transferred without authorization by the Court or Code. 11 U.S.C. § 549(a). See, e.g., Matter of Ford, 61 B.R. 913, 917 (Bankr. W.D. Wisc. 1986) (holding that a trustee could not avoid post-confirmation transfers, even though the Chapter 11 case had later been converted to Chapter 7, because absent a provision to the contrary, estate property re-vests in the debtor upon plan confirmation and § 549 only applies to property of the estate).

5

all Defendants; (Count V) Breach of Contract against NAMT, ICMG, and UBS; and, finally, (Count VI) Negligence against NAMT and Freund.

Through separately filed briefs, Defendants UBS, Rosenberg, Freedman, and Freund filed Motions to Dismiss the Amended Complaint, primarily arguing: (1) The Trustee lacks standing to bring claims on behalf of creditors, so the Amended Complaint must be dismissed in its entirety, (2) the Trustee cannot recover due to the doctrine of *in pari delicto*, and (3) the claims are not pled with sufficient particularity and lack merit.

## III. DISCUSSION

This is a core matter within the meaning of 28 U.S.C. § 157(b)(2). The determination as to whether a proceeding is "core" is one for the Bankruptcy Court to make. The U.S. Code provides, "[t]he bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection . . . ." 28 U.S.C. § 157(b)(3). The instant matter predominantly concerns the administration of the estate and deals with a dispute in interpreting a confirmed plan, and therefore may be considered a core matter as either a matter "concerning the administration of an estate" or a matter dealing with the "confirmation of plans." See 28 U.S.C. § 157(b)(2)(A), (L).

### A. Standing

The Defendants argue that the Trustee lacks standing to assert the various counts alleged in this adversary proceeding, because a trustee generally cannot bring claims on behalf of creditors. Indeed, "a bankruptcy trustee lacks authority to bring a claim directly on behalf of the debtor's creditors." Marion v. TDI, Inc., 591 F.3d 137, 148, n.15 (3d Cir. 2010). The Defendants, however, appear to have mistaken the scope of this general premise.

The Seventh Circuit Court of Appeals described the circumstances under which the trustee has standing. See In re Teknek, LLC, 563 F.3d 639, 646 (7th Cir. 2009). As the court explained,

> The trustee has the sole responsibility to represent the estate by bringing actions on its behalf . . . The estate includes any action a debtor corporation may have to recover damages for fiduciary misconduct, mismanagement or neglect of duty, and the trustee succeeds to the right to bring such actions. Second, the trustee has creditor status under 11 U.S.C. § 544 and *is the only party that can*

6

> *sue to represent the interests of the creditors as a class.* However, the trustee has no standing to bring "personal" claims of creditors.

Id. (internal citations and quotations omitted) (emphasis added). To paraphrase, a trustee can properly bring a claim for the benefit of all creditors, but cannot bring a claim on behalf of a specific creditor, individually.

As one district court has explained, "the Trustee is conferred with the authority to represent *all* creditors and the Debtor's estate and with the sole responsibility of bringing actions on behalf of the Debtor's estate to marshal assets for the estate's creditors." In re Stein, 314 B.R. 306, 311 (D.N.J. 2004). Moreover, in a case that had been converted from Chapter 11 to Chapter 7, the Third Circuit Court of Appeals determined that a trustee had standing to bring breach of fiduciary duty claims against the principals of a debtor corporation who had diverted funds from the debtor to another one of their corporations. Donaldson v. Bernstein, 104 F.3d 547, 554 (3d Cir. 1997). The court came to this decision because, ultimately, the trustee was seeking to ensure that the debtor's obligations under its plan were satisfied. Id.

It is clear here that the Trustee has standing. There is no indication that any of the claims asserted by the Trustee are for the benefit of particular creditors. Each of the claims brought by the Trustee are aimed toward a general recovery out of fairness to, and for the benefit of, all creditors. The Buono Creditors, Pearce Creditors, and other unsecured creditors were intended to receive a pro rata distribution up to specified amounts, and those claims were not satisfied in part because of alleged overpayments to other creditors. The Trustee here is not acting on personal claims for the benefit of particular creditors, but rather is seeking to recover alleged plan-overpayments made by the Estate in order to ensure an appropriate recovery for creditors in this case. Whether by fraud, breach of fiduciary duty, breach of contract, fraudulent transfer, negligence, or conspiracy, the recovery sought by the Trustee is a general recovery to benefit the Estate's creditors. Accordingly, the Trustee has standing to bring the Complaint.

### B.    *In Pari Delicto*

The Defendants argue that the Trustee is bringing these claims on behalf of LocalBizUSA and since LocalBizUSA made the disbursements in question, the Trustee's claims are barred by the doctrine of *in pari delicto*. Both the Trustee and Defendants almost exclusively rely on a single Third Circuit Court of Appeals decision in arguing their positions on the *in pari delicto* issue. See Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267

7

F.3d 340, (3d Cir. 2001) (hereinafter, R.F. Lafferty). According to the R.F. Lafferty decision, the doctrine of *in pari delicto* stands for the proposition that a plaintiff cannot assert claims against a defendant if the plaintiff ultimately bears the fault for those claims. R.F. Lafferty, 267 F.3d at 354.

R.F. Lafferty involved two corporations that were operated as a Ponzi scheme by their principals. Id. at 344-45. Once the prospect of repaying their debts became futile, the corporations filed for bankruptcy. Id. The creditor's committee subsequently acted on behalf of the debtors and sued certain third-party investors, alleging that the third party investors fraudulently induced the debtors to issue the securities in question. Id. As part of its analysis as to whether the doctrine of *in pari delicto* barred the committee's claims, the court focused on whether the debtors' principals' conduct could be imputed to the debtor corporations, and noted that state law generally provides the substantive law for determining imputation for state law claims. Id. at 358.

In New Jersey, a manager's misconduct will generally be imputed to the corporation, but there is also an "adverse interest" exception to the doctrine of *in pari delicto*. Bondi v. Citigroup, Inc., 423 N.J. Super. 377, 405 (App. Div. 2011). Under the adverse interest exception, if the subject insider acted solely for his own benefit and adverse to the interest of the corporation, then the doctrine of *in pari delicto* will not apply. Id. However, there is a "sole actor" exception to this adverse interest exception, that "[i]n situations where the party who engaged in the misconduct is the sole shareholder of the corporation or functions as the sole representative of a principal the sole actor exception applies to impute the agent's fraudulent conduct to the principal's corporation regardless of whether the conduct was adverse to the principal's corporation's interest." See In re Norvergence, Inc., 405 B.R. 709, 748 (Bankr. D.N.J. 2009).

Turning back to the R.F. Lafferty decision, the appeals court applied the doctrine of *in pari delicto*, basing its analysis on Pennslyvania's "sole actor" exception. R.F. Lafferty, 267 F.3d at 358-60. The court specifically focused on the fact that the debtors were dominated and controlled by one, sole shareholder and his family, and that the sole actor exception applied despite the fact that the shareholder's actions in operating the Ponzi scheme may have been adverse to the debtor corporations' interests. Id. at 359-60. Moreover, it is worth noting that the R.F. Lafferty decision only applied *in pari delicto* to restrict the committee's ability to step in the imputed debtors' shoes and sue third parties, as the court did not overturn the lower court's

determination that the doctrine of *in pari delicto* would not be used to defeat the claims against the debtors' insiders. See In re Walnut Leasing Co., 1999 WL 729267, *5 (E.D. Pa. Sept. 8, 1999).

Here, the facts are entirely distinguishable from R.F. Lafferty. The Third Circuit's decision dealt with a Ponzi scheme and a debtor corporations' attempt to recover from outsiders, while the instant matter involves a debtor corporation's alleged overpayments under its Plan as a result of alleged wrongdoing by its *own* principal and disbursing agents. The overpayments were not made for LocalBizUSA's benefit, and the sole actor exception does not apply because *multiple* principals were involved in this case. The instant matter is not one of a wrongdoer suing another wrongdoer—it is a trustee suing on behalf of a corporation which was allegedly induced to overpay certain parties under a plan of reorganization. Accordingly, the doctrine of *in pari delicto* will not bar the Trustee's claims.

### C.    The Particularity Requirement

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief [] and . . . a demand for the relief sought." Fed. R. Civ. P. 8. Recently, under the Supreme Court decisions in Twombly and Iqbal, there has been a shift from the historical notice pleading requirement to a more stringent plausibility standard requiring some facts to be alleged to withstand a FRCP 12(b)(6) motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009). These cases have been followed in adversary proceedings in bankruptcy courts in this Circuit and therefore are applicable to the Trustee's claims. See generally In re Pillowtex Corp., 427 B.R. 301 (Bankr. D. Del. 2010).

As per Twombly, a complaint "does not need detailed factual allegations," however the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (*internal citations omitted*). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. To survive a Rule 12(b)(6) motion, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotations omitted). This facial plausibility test requires more than a sheer possibility, but less than a probability, that a defendant acted unlawfully, and requires more than the inclusion of facts that are merely consistent with the defendant's liability. Id.

To withstand a motion to dismiss, the court should be able "to draw a reasonable inference that the defendant is liable for the misconduct alleged." Id. That is, the plausibility requirement calls only for the providing of enough fact that will lead to a reasonable expectation that discovery will unearth evidence of the illegal act. See Twombly, 550 U.S. at 545. There is essentially a two-prong analysis under this plausibility test: (1) the Court should "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and (2) where there are well-pleaded factual allegations, the Court should "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679. Understanding this modern approach to assessing the facial validity of a claim under Rule 12(b)(6) scrutiny, this Court will apply these plausibility standards to each of the counts asserted by the Trustee.

    i.    **Counts I, III, and IV: Conspiracy against all Defendants, Fraudulent Conveyance under N.J.S.A. § 25:2-25 against ICMG, NAMT and UBS, and Common Law Fraud against all Defendants**

In asserting fraud-based claims, the Trustee pled that Freund was the CFO and fiduciary solely in control of LocalBizUSA's bank accounts, that LocalBizUSA negotiated certain caps on payments to alleged insider creditors including NAMT and UBS, that Freund is a principal of both NAMT and UBS, that the Defendants had "a secret agreement to defraud Debtor's creditors by receiving moneys in excess of which they were entitled," and that Freund actively concealed financial records and Plan violations by failing to provide disclosures to creditors. In the Amended Complaint, the Trustee asserts that there are *allegedly* recordings in which one defendant, Rosenberg, *allegedly* discusses the *alleged* overpayments to other Defendant(s), and provides no dates regarding when this discussion occurred. The Trustee also asserts that the parties face claims in other jurisdictions on matters entirely unrelated to the instant matter, but without any specificity as to how these claims affect the instant matter. The Trustee's allegations fall short of the particularity requirement for fraud claims for various reasons.

In New Jersey, common law fraud involves a material misrepresentation, knowledge of falsity by the person making the representation, an intent to induce reliance, and reliance upon the misrepresentation. In re ORFA Securities Litigation, 654 F.Supp. 1449, 1461 (D.N.J. 1987) (citing Enright v. Lubow, 202 N.J. Super. 58 (App. Div. 1985)). Claims based on fraud—including fraudulent transfer claims—must be alleged with particularity. As the Third Circuit has explained, this requires the complaint to include "the who, what, when, where, and how of

the events at issue." In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198, 217 (3d Cir. 2002). The purpose for this particularity requirement is to enable defendants to begin preparing a defense to the allegations set forth. In re Norvergence, Inc. 405 B.R. 709, 726 (Bankr. D.N.J. 2009) (applying particularity requirement in fraudulent transfer action). Generally, fraud allegations of date, place, and exact manner will satisfy the particularity requirement, though alternative means are permissible. Id. In fact, this particularity requirement is relaxed in bankruptcy proceedings, particularly where the trustee—a third-party outsider—is bringing the action. Id. Though the intent element(s) can be alleged more generally with respect to complaints against multiple defendants, a plaintiff cannot simply "lump together" multiple defendants but rather must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Id. at 726-27.

Here, the Trustee has not pled its common law fraud claims with sufficient particularity. The Trustee also has not separated the allegations as to each defendant to the alleged fraud. The Trustee merely speculates that LocalBizUSA's alleged violation of the Settlement Agreement and the resulting overpayment is evidence of a collusive intent to defraud and that the Defendants were conspiring with one another. There is no evidence of fraud beyond the alleged overpayments themselves. The Trustee merely makes vague references to recordings in which overpayments were allegedly discussed, but does not provide any background information to substantiate these references. The Trustee does not provide dates as to when these discussions occurred, nor does the Trustee explain the precise content of the recordings. Even if it were accepted as true that Rosenberg at one point mentioned overpayments, without a frame of reference it is impossible to use this to tie the plan overpayments to the sort of fraudulent scheme the Trustee is alleging to have existed. The fact of the matter is that the Trustee does not explain with any particularilty what, if anything, these purported recordings reveal.

The Trustee's general assertion that "a secret agreement to defraud Debtor's creditors by receiving moneys in excess of which they were entitled" is inherently conclusory and is indicative of the Trustee's attempt to successfully proffer a self-proving argument. The mere fact that LocalBizUSA made payments generally according to the Plan is not evidence in and of itself of fraudulent intent. The only non-presumptuous fact offered by the Trustee is that Freund failed to timely report financial disclosures. However, this fact alone is not sufficient to justify the philosophical leaps the Trustee is making by arguing that the simple failure to file financial

disclosures, coupled with potential overpayments under the plan, is evidence of a fraudulent intent.

For similar reasons, the Trustee's fraudulent transfer claim has not been adequately pled. There are two types of fraudulent transfers—those based on actual fraud under N.J.S.A. 25:2-25(a), and those based on constructive fraud under N.J.S.A. 25:2-25(b). See, e.g., State Dept. Of Environmental Protection v. Caldeira, 171 N.J. 404, 409 (2002). An actually fraudulent transfer is a transfer made with actual intent to hinder, delay, or defraud any creditor of the debtor. N.J.S.A. 25:2-25(a). A constructively fraudulent transfer is one made without receiving a reasonably equivalent value in exchange for the transfer or obligation, while the debtor either was engaged or about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or intended to incur debts beyond the debtor's ability to pay as they became due. In re G-I Holdings, Inc., 313 B.R. 612, 633 (Bankr. D.N.J. 2004) (citing N.J.S.A. 25:2-25). New Jersey courts employ an analysis of the so-called "badges of fraud" in determining whether there existed an intent to defraud. N.J.S.A. 25:2-26. These badges include many factors to consider, such as whether the transfer was to an insider, whether the debtor retained possession/control of the property, whether the transfer was disclosed or concealed, whether the transfer was for substantially all of the debtor's assets, whether the debtor absconded, whether the debtor concealed assets, whether the value delivered was not reasonably equivalent to the consideration received, and whether debtor was insolvent at the time of transfer, among others. Id.

An intent to defraud, hinder or delay creditors has not been sufficiently pled with particularity. Almost none of the badges of fraud have been implicated here. It is not alleged that LocalBizUSA retained possession or control of the funds transferred, the transfers were concealed, or that the transfers were for substantially all of LocalBizUSA's assets.

Even assuming the Trustee sufficiently pled that the transfers were for less than reasonably equivalent value, the Trustee has failed to plead with any particularity that the alleged overpayments were either (1) a transaction for which the remaining assets of the debtor were unreasonably small in relation to the transaction or (2) that debtor intended to incur debts beyond debtor's ability to repay as the debts became due. The payments in question were payments made *pursuant to a confirmed plan*, even if the amount of the disbursement is questioned.

Ultimately, the facts asserted are that the disbursing agent(s) made payments according to an interpretation of the Plan which the Trustee asserts is incorrect, the Defendants all had a

business relationship with one another, and the Defendants' business operations struggled financially. There are no other facts asserted to create a plausible fraud allegation. Accordingly, the Trustee's fraud-based counts cannot survive Rule 12(b)(6) scrutiny.

Similarly, a conspiracy claim is not be sufficiently pled here. The only allegation provided by the Trustee with regard to a conspiracy is the conclusory assumption that a secret agreement among the Defendants must have existed simply because overpayments were allegedly made by the disbursing agent. There cannot be a conspiracy or agreement between the Defendants to defraud creditors where there is not a sufficiently pled allegation that there was any intent to defraud to begin with. Accordingly, this count should be dismissed as well.

### ii. Count II: Breach of Fiduciary Duty against NAMT, Cahill, Rosenberg, Giglio, Freedman, and Freund

The Trustee argues in the alternative that even if the facts alleged do not give rise to fraud claims, the Defendants at the very least breached their respective fiduciary duties by overpaying NAMT, ICMG and UBS. Under New Jersey law, to establish a breach of fiduciary duty, plaintiff must show that defendant had a duty to plaintiff, the duty was breached, that an injury resulted, and the defendant caused said injury. In re D'Amore, 472 B.R. 679, 686 (Bankr. D.N.J. 2012). Here, the Trustee asserts that NAMT breached its fiduciary duty as the disbursing agent by improperly and collusively making overpayments to the defendants and that the individual defendants aided and abetted NAMT in doing so.

The Supreme Court has previously determined that, where a distributing agent was appointed prior to a plan's confirmation hearing and that distributing agent maintained a sufficient degree of control over the allocation of assets or property among the creditors of a debtor, that said distributing agent could be held personally liable for failing to adequately allocate the debtor's assets. King v. U.S., 379 U.S. 329, 337-39 (1964) (determining that a distributing agent could be held liable as a fiduciary for breaching a fiduciary duty to oversee payment of the United States' claims on defaulted government contracts under § 3713).

Thus, it is a plausible claim that NAMT was a fiduciary and breached a fiduciary duty because NAMT, as the appointed disbursing agent, was in control to oversee the distributions and payments made by LocalBizUSA. The allegations that the disbursements were improperly made therefore give rise to a plausible claim that NAMT breached its fiduciary duty to properly make payments under the Settlement Agreement. The same can be said for Freund, who, as

CFO of LocalBizUSA and allegedly as the individual with the duty of disbursing funds, would have a fiduciary duty that may have been breached by his actions, or inactions, that caused the alleged overpayments.

With respect to the other Defendants, however, the Trustee has not set forth a plausible claim. At paragraph 29 of the Amended Complaint, only Freund is specifically alleged by the Trustee to be an agent directly participating in the disbursing duties of NAMT. The Trustee then asserts in paragraph 122 of the Amended Complaint that the individual defendants aided and abetted the alleged breach of fiduciary duties.

Under New Jersey law, aiding and abetting requires proving: (1) the commission of a wrongful act, (2) knowledge of the act by the alleged aider-abettor, and (3) the aider-abettor's knowing and substantial participation in the wrongdoing. In re Norvergence, 405 B.R. at 746. In addition, establishing aiding and abetting a breach of fiduciary duty requires showing "that the party knew that the other's conduct constituted a breach of fiduciary duty and gave substantial assistance or encouragement to the other in committing that breach." Id. (citing Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 174 (3d Cir. 2002)).

The requirements that the aiding or abetting party must know that the other's conduct constituted a breach of fiduciary duty and that the aider or abettor rendered substantial assistance or encouragement to the other severely negate the plausibility of the Trustee's claims against the remaining Defendants. Here, there are no facts alleged which indicate that any of the Defendants participated in any wrongdoing or had *knowledge* that the payments were being made improperly—in other words, there are no facts alleged which indicate that any of the Defendants knew NAMT's conduct constituted an alleged breach of fiduciary duty. The Trustee simply states in the Amended Complaint that the individual defendants aided and abetted by "allowing the transfer of Debtor's property to other Defendants or concealing same from creditors." These assertions are mere conclusions based upon the fact that funds were allegedly improperly transferred, and insufficient to satisfy the elements of the underlying claim. Accordingly, the breach of fiduciary duty count against the disbursing agent, NAMT, and Freund should not be dismissed, but the count should be dismissed with respect to all other Defendants.

### iii. Count V: Breach of Contract against NAMT, ICMG, and UBS

The Trustee's Amended Complaint gives rise to plausible breach of contract claims, as the Trustee asserts that the Plan and Settlement Agreement dictate a particular method of making disbursements, and that the terms of the Plan and Settlement Agreement were breached. A Chapter 11 plan is considered a contract between the debtor and its creditors and is therefore subject to the relevant state's laws regarding contract interpretation. As one court explained, "the confirmation of a Chapter 11 plan invokes principles of general contract law. Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract and *is binding on all parties, debtors and creditors alike*." In re Hyman Companies, 497 B.R. 465, 479 (Bankr. E.D.Pa. 2013).

At least one bankruptcy court has applied breach of contract principles under facts involving documents integrated into a confirmed plan. See In re Toy King Distributors, Inc., 256 B.R. 1, 84 (Bankr. M.D. Fla. 2000). Another bankruptcy court determined that a debtor had viable breach of contract claims stemming from a mortgage lender's alleged misapplication of payments it received from the trustee. See In re Myles, 395 B.R. 599 (Bankr. M.D.La. 2008). The court reasoned that the debtor could bring breach of contract claims against the lender for its breach of its obligations under a Chapter 13 plan because confirmed plans are binding contracts. Id. at 605.

It therefore follows that the parties to the Settlement Agreement and Plan in the instant matter are in fact bound by the Plan and, via its integration into the plan, the Settlement Agreement. This would include the defendants who received payments under the plan, as well as Freund, who is also bound by the plan. The breach of contract claim, therefore, is sufficiently pled in the Amended Complaint. The Defendants were alleged to be bound by the Settlement Agreement to distribute and receive payment subject to the above-mentioned customer quotas, and the payments distributed and received were made at a flat weekly rate in violation of the Settlement Agreement as interpreted by the Trustee in his Amended Complaint. Accordingly, the Motions to Dismiss, with respect to the Trustee's breach of contract count, should be denied.

### iv. Count VI: Negligence against NAMT and Freund

Under New Jersey law, a negligence claim requires a plaintiff to show a duty of care, a breach of said duty, an injury proximately caused by said breach, and damages. Komlodi v. Picciano, 217 N.J. 387, 409 (2014). Though this Court's research does not reveal any cases in

which a disbursing agent, in the bankruptcy context, was sued for negligence in discharging his duties, disbursing agents have been sued for negligence outside of the bankruptcy context. See Avenue CLO Fund, Ltd. v. Bankr of America, N.A., 723 F.3d 1287 (11th Cir. 2013).

Thus, if the disbursing agent was negligent in his duties and caused an injury to the estate, the Trsutee can pursue this cause of action. To the extent NAMT and Freund made overpayments by incorrectly interpreting and following the Plan, it is plausible that a negligence claim could be proven. Accordingly, this count should not be dismissed.

## IV.    CONCLUSION

Based upon the foregoing, the only claims which have been sufficiently pled to withstand the instant Rule 12(b)(6) motion are the aforementioned breach of fiduciary duty, negligence, and breach of contract claims. The Trustee's fraudulent transfer, common law fraud, and conspiracy claims do not satisfy the plausibility requirement. Accordingly, the Motions to Dismiss are DENIED in part, and GRANTED in part, as follows: (Count I) GRANTED as to all Defendants; (Count II) GRANTED as to all Defendants except NAMT and Freund; (Count III) GRANTED as to all Defendants; (Count IV) GRANTED as to all Defendants; (Count V) DENIED as to all Defendants; and (Count VI) DENIED as to both Defendants.

It is hereby directed that Counsel for the moving parties submit an order in conformance with this Opinion.

Dated:   May 14, 2015            BY THE COURT:

_/s/ Gloria M. Burns_
GLORIA M. BURNS
United States Bankruptcy Judge