| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| *Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>Edmond M. George, Esquire<br>William F. Saldutti, V, Esquire<br>Turner N. Falk, Esquire<br>Obermayer Rebmann Maxwell & Hippel LLP<br>1120 Route 73, Suite 420<br>Mount Laurel, NJ 08054<br>(856) 795-3300<br>(856) 482-0504 (fax)<br>edmond.george@obermayer.com<br>turner.falk@obermayer.com<br>*Special Counsel for Chapter 7 Trustee, John W. Hargrave* | |
| **In re:**<br><br>    **LOCALBIZUSA, INC.,**<br><br>                Debtor. | **Chapter 7**<br><br><br>**Case No. 09-20654 (JNP)** |
| **LOCALBIZUSA, INC., by and through JOHN W. HARGRAVE, Chapter 7 Trustee,**<br><br>        Plaintiff,<br>    v.<br><br>**UNIQUE BILLING SOLUTIONS, LLC,** a Nevada Limited Liability Corporation,<br>**JEFFREY ROSENBERG,** an individual,<br>**FRANK CAHILL,** an individual,<br><br>        Defendants. | **Adversary No. 14-1454 (JNP)**<br><br><br>**Judge: Jerrold N. Poslusny, Jr.**<br><br><br>**REPLY IN FURTHER SUPPORT OF MOTION OF THE CHAPTER 7 TRUSTEE TO FURTHER AMEND ADVERSARY COMPLAINT** |

John W. Hargrave, the Chapter 7 Trustee (the "Trustee") of the estate of LocalBizUSA, Inc., by and through his counsel, Obermayer Rebmann Maxwell & Hippel LLP, hereby files this Reply in Further Support Motion to Amend Adversary Complaint (the "Motion").

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The factual and procedural history of this case set out in the Motion is incorporated here as if set forth at length. All capitalized defined terms retain the same meaning as in the Motion. On December 22, 2020, Rosenberg filed a response opposing the Motion (the "Response") (DI #358).

Cahill did not file a timely response. His response was filed on December 29, 2020, a week after the deadline set by this Court. (DI #359).

UBS did not file a response at all.

## II. ARGUMENT

### A. The Motion is Unopposed as to Cahill and UBS

Neither Cahill nor UBS filed a timely response to the Motion. The Motion should be granted as unopposed as to UBS, and the Trustee must be allowed to amend as to UBS.

Cahill's response is untimely and should not be considered by this Court. Further, Cahill's response purports to incorporate every aspect of Rosenberg's response, even those portions that are unique to Rosenberg. For example, Rosenberg alleges in his Response that the proposed amended complaint is not well-pled as to him because Rosenberg did not personally undertake certain acts. Cahill's response attempts to incorporate this argument. Cahill is effectively saying, "Rosenberg did not commit a tort, so I cannot be accused of committing a tort." This argument is as farcical as it sounds. Because Cahill's response is untimely and contains none of the actual contents of a meritorious response, this Court should not consider it, and deem the Motion unopposed by Cahill.

### B. Amendment Standard

Rosenberg's Response accurately summarizes the standard for a motion to amend, namely that this Court should consider "(1) undue prejudice to the opposing parties (the touchstone consideration); (2) the movant's bad faith or dilatory motives; (3) the undue delay; (4) the repeated failure to cure deficiencies by amendments previously allowed; and (5) the futility of an amendment. Foman, 371 U.S. at 182; Arthur, 434 F.3d at 204." Response ¶II.A.

Rosenberg does not enumerate any undue prejudice that he would suffer if the Motion was granted. In fact, there is no prejudice. Whether the Motion is granted or not, discovery is complete and a trial is upcoming. Ensuring, procedurally, that Rosenberg is brought to trial on all unresolved bases of liability is not prejudice. Instead, it is justice. Rosenberg should be forced to meet all claims against him on their merits.

There has been no bad faith on the Trustee's part. The Motion clearly laid out the basis for amendment and the reasons for the timing of the amendment: the competition of discovery and the last-minute admission by the defendants that they knowingly used invalid contracts to get paid in the bankruptcy case.

This sequence of events shows there was no undue delay. The Trustee is not seeking to obstruct the resolution of this case or sleeping on his rights. When the Trustee discovered evidence substantiating the claims in the proposed complaint, he moved to amend. This is entirely proper, and Rosenberg does not challenge this.

Rosenberg does not argue that amendment is barred by previous failures to cure deficiencies. In addition, there are no such deficiencies because the proposed complaint pleads all claims sufficiently based on a closed discovery record, when that discovery uncovered meritorious claims and relevant facts.

Rosenberg's Response is almost entirely based on the premise that amendment would be futile. Fed. R. Civ. P. 15 provides that "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In general, courts grant leave to amend with "extreme liberality" in order to ensure that a case is decided on its merits. Skolnick v. Tarragon Corp. (In re Tarragon Corp.), Case No. 09-10555 (DHS), 2012 Bankr. LEXIS 3874, *9 citing Moss v. U.S. Secret Service, 572 F.3d 962, 972 (9th Cir. 2009). This "extreme liberality" includes granting amendment even when the ultimate merits of the amendment are uncertain. Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 256-57 (App. Div. 1997) citing City Check Cashing v. Nat'l State Bank, 244 N.J. Super. 304, 308-09, (App.Div.), certif. denied, 122 N.J. 389 (1990) (applying substantially-similar state law).

Rosenberg accurately alleges that the crucial determination when assessing futility is whether the amendments would withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). As such, this Court should not deeply search each amended claim and weigh evidence, but should apply the familiar motion to dismiss standard, assuming the well-pled facts are true. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). If the amended claims are adequately pled, amendment is not futile and the Motion must be granted.

### C. No Claims are Time-Barred

#### i. All claims relate back to the original pleading

Rosenberg argues that the Trustee's §549, conversion/embezzlement, and fiduciary responsibility claims should not be allowed because the statutes of limitations for these claims have tolled. This is not so, since these claims relate back to filing of the initial complaint and are deemed to have been brought at the time that complaint was filed – before the statute of limitations on any claims ran. Under Fed. R. Civ. P. 15(c), an amendment relates back to the original pleading

when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B), applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7015. Further, amendments relate back if they "amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading." Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004). An amendment that would normally be time barred due to the tolling of the statute of limitations may be pled as long as it relates back to the original pleading. Anderson v. Bondex Int'l, Inc., 552 F. App'x 153, 156 (3d Cir. 2014).

The Trustee's §549, conversion/embezzlement, and fiduciary responsibility claims all relate back to the original pleading as they arise out of the same set of facts and the same conduct plead in the original pleading. The original complaint alleged a course of improper conduct involving customer refund accounts, the conduct of the Debtor and it various agents and contractor/creditors during the chapter 11 case. Every claim in the proposed complaint arises out of this same series of transactions. Specifically, these claims serve to "amplify the factual circumstances" surrounding the illegal and unauthorized postpetition distribution of estate property from the chapter 7 estate, as well as Rosenberg and Cahill's handling of the customer refund account. Further, on a macro level, these claims arise out of Rosenberg and Cahill's general mishandling of the Debtor's funds, accounts and property that ensured all funds would end up in the hands of contractors who were also prepetition creditors – this was the crux of the original pleading. Since these claims relate back, none are time-barred.

  ii. The Discovery Rule Applies

Under New Jersey's discovery rule, the statute of limitations begins to run on the date of the injured party discovers the tortious conduct or the injury. Ben Elazar v. Macrietta Cleaners,

Inc., 230 N.J. 123, 165 A.3d 758 (2017) citing McDade v. Siazon, 208 N.J. 463, 475, 32 A.3d 1122 (2011). The standard for when the discovery rule applies is an objective one: "whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running." Baird v. Am. Med. Optics, 155 N.J. 54, 72, 713 A.2d 1019 (1998). Here, it was impossible for Trustee to discover the conduct giving rise to the §549, conversion, embezzlement, and fiduciary responsibility claims before Rosenberg and Cahill's depositions were taken in September and October of 2020. Rosenberg and Cahill took significant steps to obscure these activities including the destruction and failure to maintain records. It was not until Rosenberg and Cahill were questioned under oath that the very existence of certain injuries became clear. Therefore, the statute of limitations did not begin to toll on these claims until October 2020, a mere three (3) months ago.

### D. No Necessary Parties were Omitted

The Response alleges that the fraud claims, and the other claims that rely upon them, must be dismissed because necessary parties were not made defendants. Rosenberg alleges that some or all creditors or individuals involved in the DIP's management and postconfirmation business are necessary parties whose rights and duties must be unwound in order for the Trustee to obtain relief. Since these parties are admittedly not defendants, Rosenberg alleges that the Court should dismiss the fraud-based claims.

A contract induced by fraud is voidable. When a court voids a contract on the basis of fraud or fraudulent inducement, the court should strive to excise only those non-severable provisions of a contract that were actually implicated in the fraudulent conduct. "A severable transaction may be partially rescinded." Bonnco Petrol, Inc. v. Epstein, 560 A. 2d 655 (N.J. 1989) citing IMO Development Corp. v. Dow Corning, 135 Cal. App.3d 451, 457 (1982). That is, the

voidable provision of a contract drops out, but "it goes without saying that, in keeping with the general law of contracts, the valid provisions of a contract […] are enforceable, if severable." Bauer v. City of Newark, 81 A. 2d 727 (N.J. 1951).

The Trustee is not challenging portions of the Intercreditor Agreement or cash collateral orders or Plan relating to payments to NAMT/ICMG or other parties to those contract. The Trustee is merely challenging the portions of those agreements that authorized payment to UBS upon false premises, which were induced by Rosenberg and Cahill's fraudulent misrepresentation that an admittedly-invalid contract governed their prepetition relations with the Debtor. Put simply, the various agreements had a number of parties but the terms as to each creditor/contractor party are clearly severable from the terms as to other parties. Rosenberg apparently alleges that, if UBS received payment by a fraudulently-induced contract, that should somehow undo a contract with NAMT/ICMG. There is no basis in law or fact for this assertion – the provisions of these challenged contracts applicable to UBS can be voided by the Court without disturbing the overall structure of these agreements. The other parties to the agreements are not necessary parties because their rights will not be altered.

To state the claim a slightly different way, the cash collateral orders and other contracts directed operations and payment to NAMT/ICMG and UBS and other entities. Each cash collateral order was effectively several separate agreements placed in one order for the sake of simplicity. This Court may void just one of those agreements without voiding the others.

Nonetheless, even if certain parties are not defendants in this case, there is no specific reason why this Court cannot afford appropriate monetary relief upon the proposed complaint. That is, Rosenberg has alleged there are necessary parties but had failed to explain why this Court would be unable to enter a money judgment against him in the absence of those parties.

### E. Rosenberg Cannot Obtain Dismissal of Existing Claims

Curiously, Rosenberg attempts to argue in his Response that the claims for piercing the corporate veil are now futile, stating that they should be dismissed. Not only are the veil piercing claims not futile, but there is no basis for them to be dismissed. The veil piercing claims were present in the current complaint; Trustee is not moving to add them via the Motion.

Rosenberg is either ignorant of the claims plead in the initial pleading, or he is attempting to trick this Court into dismissing these claims. Further, there is no legal basis provided in support of Rosenberg's argument. All that is provided is page after page of deposition transcript, all that have no logical connection to Rosenberg's argument. Rosenberg is not cross moving to dismiss the Complaint, and as such, it is entirely improper for him to ask the veil piercing claims be dismissed at this point in time.

### F. All Claims are Well-Pled

#### i. The §549 Claim is Well-Pled

The Response alleges that the §549 claim is frivolous because Rosenberg admits that he received the money, does not admit liability, and promises vaguely to pay $3,000.00 to resolve that claim. This argument is nonsensical in that it admits liability, denies liability and alleges that a promise of payment that Rosenberg has not made requires dismissal of a valid claim.

The Response apparently alleges that the transferred property is not estate property. This is false based on the face of the proposed complaint. First, customer refund money was clearly property of the preconfirmation DIP in that it had to be returned to the DIP if not spent. In that form, the refund money was either directly estate property or proceeds of estate property, both of which are included within the ambit of 11 U.S.C. §541(a)(1), (6).

Rosenberg's statement that Trustee's 549 claim is a "Non-Issue" is not supported by any legal or factual argument. The only argument Rosenberg makes is that $3,000.00 is "not worth fighting for." This statement is completely objective, and it is not for Rosenberg to say what is or is not worth fighting for. Further, it is interesting that Rosenberg asks Trustee to set forth payment instructions, while at the same time refusing to admit liability for the amounts due under the transfer.

The Response also alleges that the Trustee cannot pursue this claim because all estate property re-vests in the Debtor upon confirmation. As alleged in the proposed complaint, a bankruptcy estate does not cease to exist upon confirmation. The bankruptcy estate ceases to exist when the case is closed, which did not occur in this case. Even post-confirmation, the bankruptcy estate exists and relevant property "touches" that estate before being vested by operation of a plan in the debtor. This must be the case otherwise, upon conversion to chapter 7, there will be no estate whatsoever and no possibility for post-conversion oversight by the U.S. Trustee and court.

### ii. Fraud is Pled with Particularity

The Response alleges that the fraud claim is not pled with the requisite particularity, mainly because the timing of the fraud is insufficiently specified. The Response then goes on to lay out each agreement and order that relied upon that fraud, with specific dates. That is, the Response itself lays out the specific timing.

The Response also alleges that damages are insufficiently pled. The damages pled in the proposed complaint are the amounts paid to UBS under the various fraudulently-induced agreements, and the consequential damages of those payments.

The Response also, incredibly, alleges that the Trustee cannot pursue fraud because the DIP "cannot be defrauded by no one advising the Debtor of its own oral understandings."

Response at 11. That is, Rosenberg's position is that if the DIP and UBS worked together to use an invalid agreement to obtain payment for UBS, the entire fraud claim is barred. Apparently Rosenberg would have this Court determine that the Trustee and chapter 7 estate are deemed to be participants in an earlier fraud they did not commit, so they have unclean hands and cannot recover. There is no basis for this argument: a chapter 7 estate is a different legal person with sufficiently-different legal rights from a debtor such that the chapter 7 estate can challenge voluntary transactions made prepetition or preconversion, whether or not the debtor participated in the relevant bad acts. To hold otherwise would neuter the "actual fraud" mechanism of 11 U.S.C. §548, among other abhorrent consequences. In Cantu v. Schmidt (In re Cantu), 784 F.3d 253 (5th Cir. 2015), the Fifth Circuit even held that a cause of action which comes into existence during the pendency of a chapter 11 belongs to the chapter 7 estate upon conversion because it is an interest acquired by the estate or proceeds of estate property under 11 U.S.C. §541(a)(6), (7). This is exactly what is alleged in the proposed complaint: that UBS, by the actions of Rosenberg and Cahill, defrauded the chapter 11 estate and the Court. The chapter 11 estate thus acquired a cause of action for fraud which it passed to the chapter 7 estate upon conversion.

### iii. Section 1144 does not Defeat the Claims

The Response alleges that 11 U.S.C. §1144 prevents the rescission of the Plan for fraud outside the applicable time window. However, section 1144 does not apply to an attempt to rescind preconfirmation cash collateral orders or the Intercreditor Agreement, all of which were premised upon a fraud.

Likewise, section 1144 does not preclude a claim for damages based on a fraud that somehow touched a confirmed plan. In re Coffee Cupboard, Inc., 119 B.R. 14, 19 ("Section 1144 does not act as a bar to truly independent courses of action based on a debtor's wrongful conduct.").

      iv. <u>Conversion is Well-Pled</u>

Rosenberg argues that Trustee's claim for embezzlement (more properly considered as a claim for conversion) was not sufficiently plead. The Response applies the correct standard: a repudiation of the owner's right which has the effect of destroying the quality of the chattel. <u>LaPlace v. Briere</u>, 404 N.J. Super. 585, 596 (App. Div. 2009) (citations omitted). Viewed this way, a conversion claim is a civil remedy for theft of property.

The response alleges that this claim is not adequately pled. It alleges that the Trustee must plead exactly where stolen funds went. This is not so – the Trustee pled, via the evidence attached to the proposed complaint, that some customer refund money went to Rosenberg, Galleria Associates and other non-customers. The proposed complaint also alleges particular facts from which this Court can properly infer that some or all refund money was misappropriated by the defendants: the defendants had complete control over the money, have produced no documentation of where the money went, and have testified implausibly that exactly every single dollar was spent on customers but not a penny more. Not only is that provably false (given that some funds went to Rosenberg directly) it is also facially incredible even leaving out those misappropriated monies.

The Response alleges that customer refund money did not belong to the Debtor. This is a farcical assertion: the refund money was funded by separate distributions from the Debtor, totally distinct from the "unconditional" payments to UBS. See Proposed Complaint ¶¶131-136. The separate source of refund money is not only well-pled in the proposed complaint, it was also the sworn testimony of Cahill that any unspent refund money belonged to the Debtor and had to be returned.

### v. Fiduciary Breach is Well-Pled

The Response alleges that a plan disbursing agent has no special status and thus no fiduciary duties. "The undertaking to act as disbursing agent necessarily implies a correlative duty to account to creditors entitled to distributions under the Plan." In re Patel, __ B.R. ___, 2020 Bankr. LEXIS 2904, at *18 (Bankr. E.D. Cal. Oct. 15, 2020). In Patel, the debtors designated themselves as disbursing agent, and thus took on attendant fiduciary duties: "Viewed through the prism of trusts, the Plan's disbursing agent structure places the Revested Debtors in the position of settlor and trustee. The trust corpus is the motel business. The Class V unsecured creditors are beneficiaries. The trust terminates either by disbursement to the beneficiaries according to the 84-month term of the Plan or by Conversion to chapter 7." Id.

Admittedly, the fiduciary duties of a disbursing agent are not often invoked because they are duties merely to abide by and disburse in accordance with the confirmed plan. Most disbursing agents accomplish these duties without issue. However the proposed complaint clearly pleads that the defendants took over disbursing agent duties specifically to keep payments flowing to certain entities which were not entitled to those payments under the relevant cash collateral orders and Plan. That is, the complaint alleges that the defendants put themselves in the position of disbursing agent with the intent to misuse that power. Then they misused their power and directed substantial overpayments to UBS and other entities.

The Response alleges that no defendants actually usurped the disbursing agent role. This argument would require the Court to weigh evidence, and cannot be considered under the motion to dismiss standard. Nevertheless, Freund's clear testimony attached to the proposed complaint plausibly shows that Cahill, on behalf of UBS and for the improper profit of UBS principals, pushed Freund to the side and assumed the disbursing agent role.

### vi. Other Claims are Well-Pled

The Response alleges that the unjust enrichment claim is not well-pled. However, as discussed above, the proposed complaint does sufficiently plead causes of action from which the Court could void some or all contractual relationships between UBS and the Debtor. If the Court does so, this will leave certain transactions which indisputably occurred as "orphans" governed by no applicable valid contract. In the event that this occurs, an unjust enrichment claim is proper.

The claim for personal liability based on personal participation in tortious conduct is well-pled. Both Rosenberg and Cahill testified repeatedly that they knew everything the other did for UBS, always consulted each other before taking a decision and only ever acted in concert. Rosenberg now alleges that, even if Cahill committed certain torts, Rosenberg had no knowledge of them. That argument is not supported by the well-pled allegations in the proposed complaint. Further, it is logically impossible. Rosenberg knew, prepetition, that the written Contract had ceased to be enforceable. It cannot have been an "innocent surprise" to him if that invalid contract was then used in the Intercreditor Agreement, cash collateral orders and the Plan. There is more than enough evidence of Rosenberg's personal participation in torts, and so a claim for his personal liability is well-pled.

### III. CONCLUSION

Rosenberg may not obtain dismissal of already-pled claims via his Response. The motion is unopposed as to UBS and Cahill, and should be granted as to them by default. All new claims in the proposed complaint are well-pled and related back. These claims can withstand a motion to dismiss, so amendment is not futile. These claims are timely and the Motion should be allowed to permit this case to be tried upon its merits.

Dated: January 6, 2021                             */s/ Turner N. Falk*
                                                    Turner N. Falk, Esquire

OMC\4849-7788-3862.v1-1/6/21