| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| *Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>Edmond M. George, Esquire<br>William F. Saldutti, V, Esquire<br>Turner N. Falk, Esquire<br>Obermayer Rebmann Maxwell & Hippel LLP<br>1120 Route 73, Suite 420<br>Mount Laurel, NJ  08054<br>(856) 795-3300<br>(856) 482-0504 (fax)<br>edmond.george@obermayer.com<br>turner.falk@obermayer.com<br>*Special Counsel for Chapter 7 Trustee, John W. Hargrave* | |
| **In re:**<br><br>     **LOCALBIZUSA, INC.,**<br><br>                         Debtor. | **Chapter 7**<br><br><br>**Case No. 09-20654 (JNP)** |
| **LOCALBIZUSA, INC., by and through JOHN W. HARGRAVE, Chapter 7 Trustee,**<br><br>         Plaintiff,<br>   v.<br><br>**UNIQUE BILLING SOLUTIONS, LLC, a Nevada Limited Liability Corporation,**<br>**JEFFREY ROSENBERG, an individual,**<br>**FRANK CAHILL, an individual,**<br><br>         Defendants. | **Adversary No. 14-1454 (JNP)**<br><br><br>**Judge Jerrold N. Poslusny, Jr.** |

**MEMORANDUM OF LAW IN SUPPORT OF JOHN W. HARGRAVE, CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER APPROVING THE SETTLEMENT AMONG THE CHAPTER 7 TRUSTEE AND JEFFERY ROSENBERG AND FRANK CAHILL AND UNIQUE BILLING SOLUTIONS**

John W. Hargrave, Chapter 7 Trustee (the "Trustee") of the estate of LocalBizUSA, Inc.

(the "Debtor" or "LocalBiz"), by and through his undersigned counsel, Obermayer Rebmann

Maxwell & Hippel LLP, hereby submits the following Memorandum of Law in support of his

4833-7238-4752.v1-7/6/21

Motion for an Order Approving the Settlement Agreement Among the Trustee and Jeffrey Rosenberg ("Rosenberg"), Frank Cahill ("Cahill") and Unique Billing Solutions ("UBS"), (each a "Defendant" and collectively with the Trustee and Debtor, a "Party" or "Parties") (the "Motion").

I.  **PRELIMINARY STATEMENT**

The Trustee instituted this adversary proceeding seven (7) years ago seeking recovery of moneys diverted away from the Debtor and its creditors by the acts and/or omissions of the Defendants, North American Marketing Tours, Inc. ("NAMT"), International Consulting and Management Group, LLC, ("ICMG"), UBS and their respective principals, Thomas J. Freund ("Freund"), Louis Freedman ("Freedman"), Cahill, and Rosenberg, among others. The Trustee previously reached an agreement to settle the causes of action against only Freund, Freedman, Ronald Citta ("Citta"), NAMT, and ICMG. The Trustee has now reached an agreement to settle the causes of actions against Rosenberg, Cahill, and UBS (the "Settling Defendants"). The settlement was a result of hours of negotiations, substantial discovery, and lengthy analysis by the parties to the settlement. The settlement contemplated by the executed settlement agreement (the "Settlement Agreement") will resolve with certainty the claims against the Settling Defendants and provide a recovery for the Debtor's estate which was otherwise uncertain. A true and correct copy of the proposed Settlement Agreement is attached hereto as **Exhibit A**. The settlement reached by the Trustee and Settling Defendants falls within the range of reasonableness and is fair and in the best interest of the Debtor's estate.

II. **JURISDICTION AND VENUE**

1.  This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E) and (O).

2.  The statutory basis for the relief requested herein is Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(a).

### III. FACTUAL BACKGROUND

3.  The Debtor was formed on October 18, 1999 as a New Jersey corporation with Rosenberg as the sole officer/director.

4.  The Debtor provided "web creation services," which were sold to consumers via telemarketers, and customers were billed for said services through their monthly telephone invoices produced by their carriers.

#### A. Debtor's Bankruptcy

5.  The Debtor's case was commenced on April 28, 2009 by the filing of an involuntary Chapter 7 proceeding by certain of the Debtor's creditors.

6.  On May 21, 2009, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

7.  On or about June 15, 2009, the Court entered a consent order substantively consolidating the Debtor's proceedings.

8.  On June 24, 2009, the Court entered an order converting the Debtor's case to one under Chapter 11.

9.  Through a series of cash collateral orders entered in the Debtor's Chapter 11 proceeding, the Debtor was limited in its ability to spend money.

10. In that regard, the cash collateral orders forbid the Debtor from paying expenses that were not critical to its operations, and limited payments to certain vendor creditors of the Debtor.

11. Specifically, the cash collateral orders provided that the Debtor was bound by purported prepetition contractual agreements for payment to defendants UBS, which was owned and controlled by defendants Rosenberg and Cahill.

12. In November of 2009, the Debtor, UBS and certain creditors entered into an Intercreditor and Settlement Agreement ("Intercreditor Agreement") pursuant to which the Debtor agreed to file a plan of reorganization encompassing the Settlement terms.

13. On April 14, 2010, the Debtor filed its Second Modified Plan of Reorganization ("Plan"). On June 3, 2010, the Bankruptcy Court entered an order confirming the Debtor's Plan.

14. The Plan incorporated the Intercreditor Agreement, as well as the obligations and limitations on the payment of moneys under the purpoted prepetition contractual arrangements between the Debtor, UBS and certain other companies purportedly providing business services to the Debtor.

15. Post-confirmation, disbursing agent NAMT through its agent Freund, failed to timely file post-confirmation reports, and upon the filing of the overdue reports, disputes arose relating to the implementation of the Plan and payments to creditors.

16. On or about October 9, 2012, the Court entered an order wherein the Bankruptcy case was converted to a Chapter 7 proceeding.

17. The Trustee was appointed to act as a Trustee under §701 of the Bankruptcy Code, and is vested with all of the Debtor's right, title and interest in its assets under §704 of the Bankruptcy Code.

### B. The Present Adversary Proceeding

18. This Adversary Proceeding was filed by the Trustee in order to resolve the dispute with respect to revenues generated by the Debtor's business, and in particular, who was responsible for the deliberate depletion of the Debtor's assets.

19. Specifically, the Trustee found that the Debtor was merely a shell through which NAMT, ICMG, and UBS, by their principals, acted in concert to unlawfully maximize payments to themselves, in anticipation of government intervention which would cease the Debtor's operations.

20. Based upon the limited information available to the Trustee, he commenced the instant adversary proceeding on May 6, 2014, against NAMT, ICMG, UBS, Freund, Pat Giglio, Louis Freedman, Rosenberg, and John Does 1-10, alleging (1) recovery of post-petition transfers under § 549 of the Bankruptcy Code; (2) conspiracy; (3) breach of fiduciary duty; (4) fraudulent conveyance under the New Jersey Fraudulent Transfer Act, N.J.S.A. § 25:2-5; (5) common law fraud; and (6) breach of contract.

21. After a series of amendments, motions to dismiss and settlements, the Trustee was granted leave to file a Third Amended Complaint alleging claims for breach of contract and equitable subordination against UBS and for personal liability via an alter ego veil-piercing against Rosenberg and Cahill.

22. The Trustee, Freund, Freedman, Citta, ICMG, and NAMT spent significant time analyzing their respective positions and concluded that a resolution of the claims against Freund, Freedman, Citta, ICMG and NAMT only.

23. The Trustee settled with these parties via a settlement that was approved by this Court, leaving only the Settling Defendants in the case.

      C.      **Fourth Amended Complaint**

24. Since that time, Trustee has conducted lengthy and detailed discovery in this matter with respect to Rosenberg, Cahill, and UBS.

25. The deposition of Cahill occurred on September 22, 2020.

26. The deposition of Rosenberg occurred on September 30, 2020.

27. Through the depositions and reviewing the transcripts, the Trustee uncovered various facts that gave him grounds to amend the Complaint and plead additional claims against Rosenberg, Cahill and UBS.

28. Trustee moved to amend the complaint, for a fourth and final time, and that request was granted on April 16, 2021.

29. On April 26, 2021, the Trustee filed a Fourth Amended Complaint alleging counts for breach of contract and equitable subordination against UBS, claims for fraud/fraudulent inducement and unjust enrichment against the Defendants, claims for fiduciary breach against UBS and Cahill and claims for personal liability for participation in tortious acts and for piercing the corporate veil against Rosenberg and Cahill.

      D.      **Settlement with Rosenberg, Cahill, and UBS**

30. The Trustee, Defendants, and their respective counsel engaged in settlement conversations following the filing of the Fourth Amended Complaint.

31. The Parties reached a global settlement agreement and placed the terms of that agreement on the record on June 8, 2021, as confirmed by email from the Court.

32. The Parties have spent sufficient time analyzing the respective positions of the Parties and have concluded that a resolution of the Trustee's claims against the above referenced Defendants, the Parties have agreed that resolution of the Trustee's claims short of adjudicative

4833-7238-4752.v1-7/6/21

litigation best serves the interests of the Debtor's bankruptcy estate, the Defendants, and the Debtor's creditors.

33. The litigation with the Settling Defendants was vigorously disputed, contested and expensive.

34. Though the Trustee believes that he will prevail on the claims against the Settling Defendants, the Trustee wishes to settle the clams, the outcome of which is uncertain.

35. The settlement ensures a recovery for the estate of its claims.

36. The Trustee and the Settling Defendants have negotiated the proposed Settlement Agreement in good faith, and by this Motion the Trustee seeks authorization to settle and compromise the claims set forth in the Settlement Agreement.

37. The Trustee and Settling Defendants have executed the Settlement Agreement and placed all material terms on the record before this Court.

**E.    Terms of the Settlement Agreement**

38. The terms and conditions of the Settlement Agreement provide, *inter alia*, as follows:

    A.    <u>Settlement Payments</u>.  In full and final settlement and satisfaction of the disputes between and among the Parties as set forth herein, including but not limited to the Proofs of Claim filed by UBS, and the Adversary, Rosenberg and Cahill shall each pay to the Debtor's Chapter 7 Estate, c/o the Trustee, the Twenty Thousand Dollars ($20,000.00) in good funds, for a total amount of Forty Thousand Dollars ($40,000.00) (the "Settlement Payment").

    B.    <u>Time for Payment</u>. The Parties agree that once a final version of the Settlement Agreement is agreed upon, each shall execute this Settlement Agreement within five (5) days thereof.  Rosenberg and Cahill shall pay their portions of the Settlement Payment to Christopher Stanchina Esquire, L.L.C.'s Attorney Trust Account, the law firm of Rosenberg's counsel, within ten (10) days of the complete execution of this Settlement Agreement.  This duty to place the Settlement Payment in escrow shall not be conditioned upon approval by the Bankruptcy Court.  Upon approval of this agreement by the Bankruptcy Court under Federal Rule of Bankruptcy Procedure 9019, Christopher J. Stanchina, Esquire, LLC. shall disburse the funds to the Trustee.  Christopher J. Stanchina Esquire, L.L.C. shall confirm the receipt and deposit of the Settlement Payments into the

law firm's Attorney Trust Account to Trustee's counsel within three business days of deposits being made.

      C.      <u>Disallowance and Waiver of UBS Claim.</u>  Rosenberg and Cahill represent that they have authority to bind UBS to this Settlement Agreement.  Upon approval of this Settlement Agreement by the Bankruptcy Court, the secured claim filed by UBS shall be deemed disallowed.  UBS hereby waives any right to assert any other claim on any basis, including any claim for administrative expenses.

      D.      <u>Dismissal with Prejudice.</u>  Upon approval of the Settlement Agreement, adversary proceeding No. 14-1454 shall be dismissed with prejudice against all Defendants.

      E.      <u>Subject to Bankruptcy Court Approval</u>.  Upon the receipt of a fully executed copy of this Settlement Agreement, the Trustee shall, within fifteen (15) days, file with the Bankruptcy Court a motion for approval of the settlement and this Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.  The Settlement Agreement shall become effective on the date it is approved by the Bankruptcy Court (the "Effective Date").

      a. If the Bankruptcy Court issues an order approving this Settlement Agreement, and the Effective Date occurs, the Trustee, on behalf of the Debtor's Chapter 7 Estate, shall be entitled to immediately receive, within seven (7) days of such approval, the Settlement Payment from escrow.  Christopher J. Stanchina Esquire, L.L.C. shall pay the Settlement Payment to "John Hargrave, as Chapter 7 Trustee for the estate of LocalBizUSA, Inc." and it shall be forwarded to the Trustee's counsel's office in Philadelphia, Pennsylvania.

      b. If the Bankruptcy Court denies approval of this Settlement Agreement, except as provided in Sections 1 and 2, this Settlement Agreement shall be null and void and made without prejudice to any Party, all of which shall be restored to their respective legal positions as of immediately prior to the execution of this Agreement, in which event Christopher J. Stanchina, Esquire, L.L.C. shall return the escrow monies to the payors.

      F.      <u>Nature of the Releases</u>.

      a. On the Effective Date of the Settlement Agreement, and only after the Trustee receives the Settlement Payment from the Parties, and in consideration of the mutual promises and covenants contained herein, the Trustee and the Debtor, individually and on behalf of the Debtor's estate, its affiliates, parents, predecessors, successors, subsidiaries, assigns, owners, shareholders, officers, directors, creditors, employees and other agents, directly and derivatively shall, without the need for further order of the Court, release, acquit and forever

    discharge the Defendants, their successors, assigns, officers, directors, shareholders, employees, experts, employers, attorneys and agents, and any entity owned and/or controlled by any Defendant, of and from any and all claims, actions, causes of action, demands, damages (whether actual, compensatory, punitive, statutory known or unknown), costs and expenses (including but not limited to attorneys' fees) that the Trustee and the Debtor may have had from the beginning of and until the end of time or that may hereafter accrue to the Trustee and/or the Debtor, except for their obligations under this Settlement Agreement.

  b. Also on the Effective Date of the Settlement Agreement, the Parties their affiliates, heirs, legatees, successors, predecessors, subsidiaries, assigns, officers, directors, employees, experts, employers, attorneys and other agents, and any entity owned or controlled by any Defendant, directly and derivatively shall release, acquit and forever discharge the Debtor, the Debtor's estate, the Trustee, the Trustee's professionals, as well as their respective predecessors, successors, subsidiaries, affiliates, parents, assigns, officers, directors, employees, attorneys and agents, of and from any and all claims, actions, causes of actions, demands, damages (whether actual, compensatory, punitive, statutory known or unknown), costs and expenses (including but not limited to attorneys' fees) from the beginning of and until the end of time, including any filed proof of claim, whether alleged to be secure or unsecured, or as an administrative claimant, and shall no longer actively participate in the Debtor's bankruptcy proceeding as a creditor or party-in-interest, except for the obligations under this Settlement Agreement.

 G. <u>No Admission of Liability</u>.  This Settlement Agreement is a compromise resolution of disputed claims for the purpose of mitigating the costs, uncertainties and burdens of litigation, and the releases referenced herein do not constitute an acknowledgment or admission of liability in any way on the part of any of the Parties to the Settlement Agreement, each of whom expressly denies any liability or wrongdoing.

 H. <u>Default</u>.  It shall be a default under this Settlement Agreement should Rosenberg and Cahill fail to make the Settlement Payment to Christopher J. Stanchina Esquire, L.L.C.'s Attorney Trust Account within ten (10) days of receiving a fully executed copy of this Settlement Agreement.  In the event of a default, the Trustee may bring a summary proceeding for payment of the Settlement Payment, and the Defendants consent to the entry of a judgement by the Bankruptcy Court against them jointly and severally in the amount of the Settlement Payment, plus interest and customary and reasonable attorney's fees.

I.  Governing Provisions.

   a. Entire Agreement/Amendment. This Settlement Agreement constitutes the entire agreement between and among the Parties pertaining to the subject matter contained herein, supersedes any prior agreements, and shall not be modified or amended except by an instrument in writing signed by all the Parties hereto.

   b. Invalid Provisions. If, after the date hereof, any provision of this Settlement Agreement is held to be illegal, invalid or unenforceable under the present or future laws effective during the term of this Settlement Agreement, such provision shall be fully severable and not affect any other provision of this Settlement Agreement. In lieu thereof, there shall be added a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible to be legal, valid and enforceable.

   c. Titles, Headings and Captions. All titles, headings and captions used in this Settlement Agreement have been intended for administrative convenience only and do not constitute matters to be construed in interpreting this Agreement.

   d. Successors and Assigns. The obligations and duties of the Parties hereto shall be binding upon the Parties, their successors and assigns, as applicable and the rights of this Settlement Agreement shall inure to the benefit of successors and assigns.

   e. Advice of Counsel. Each Party warrants that it has been represented and advised by counsel or has had full opportunity to be represented and advised by counsel with respect to this Agreement and all matters covered by it. Cahill represents that he is *pro se* and has been informed of his ability to seek counsel regarding the terms of this Settlement Agreement.

   f. Attorneys' Fees. Should any action, motion, suit or proceeding be commenced by either Party to this Settlement Agreement to enforce any default of any provision hereof, the prevailing Party shall be entitled to recover from the other Party, in addition to obtaining other relief, customary and reasonable attorneys' fees and costs and expenses incurred in said application, including but not limited to any appeal.

   g. Choice of Law. This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of New Jersey, without regard to rules regarding conflict of laws. All disputes regarding this Settlement Agreement shall be brought only in the

        Bankruptcy Court; <u>provided</u> <u>however</u>, that if the Bankruptcy Court is unwilling or unable to hear any such dispute, the United States Federal Courts located in the District of New Jersey will have sole jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Settlement Agreement or the transactions contemplated hereby.

  h.  <u>Own Costs</u>. Each of the Parties shall pay its own respective costs and attorneys' fees incurred with respect to the matters constituting and underlying the Adversary or any other matter.

  i.  <u>Escrow Agent</u>. Christopher J. Stanchina, Esquire, L.L.C.. will serve as escrow agent for the escrowing of the Settlement Payment, and has waived any and all fees and costs associated or incurred therewith. If the Escrow Agent needs to incur legal fees in connection with its services, such reasonable legal fees shall solely be the responsibility of the Defendants.

  j.  <u>Counterparts</u>. This Settlement Agreement may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument. Facsimile and electronic copies of executed copies of this Settlement Agreement shall be deemed the equivalent of an original copy of this Settlement Agreement for all purposes.

<u>See</u> Ex. A.

39. The summary herein of the terms is intended as a summary only and all parties in interest are encouraged to read the Settlement Agreement.

40. To the extent that there are any discrepancies between the summary contained herein and the terms contained in the Settlement Agreement, the terms of the Settlement Agreement shall control.

41. The Settlement is an arms' length, good faith and reasoned resolution of the disputes between the Trustee and the Settling Defendants, and accordingly, the Trustee seeks approval of the Stipulation under Federal Rule of Bankruptcy Procedure 9019, and §105 of the Bankruptcy Code. <u>See</u> Certification of John Hargrave in Support of Motion.

**IV.    LEGAL ARGUMENT & REQUEST FOR RELIEF**

42.    Federal Rule of Bankruptcy Procedure 9019(a) provides "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.

43.    "The decision to approve or disapprove a settlement is within the sound discretion of the bankruptcy judge." *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

44.    The Trustee seeks approval, pursuant to Bankruptcy Code § 105 and Fed. R. Bankr. P. 9019, of the settlement of the claims among the Parties as set forth in the Settlement Agreement.

45.    In *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, *reh'g denied*, 391 U.S. 909 (1968), the Supreme Court instructed as to those factors to be considered in determining whether to approve a settlement.

46.    The factors outlined by the Supreme Court in *Anderson* have been uniformly summarized as follows:

> A. the probability of success in the litigation;
> B. the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it;
> C. the difficulties, if any, to be encountered in the matter of collection; and
> D. the paramount interest of the creditors.

*See Martin*, 91 F.3d at 393 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993); *In re Grant Broad. of Philadelphia, Inc.*, 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987).

47.    Bankruptcy Rule 9019 authorizes this Court to approve the settlement entered into by the Parties.

48. The decision whether to accept or reject a compromise is committed to the sound discretion of the Bankruptcy Court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate." *See Louise's*, 211 B.R. at 801; s*ee also In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

49. The settlement need not be the best that the debtor could have achieved, but must only fall "within the reasonable range of litigation possibilities." *See In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979).

50. In making its determination, a court is not to substitute its own judgment for that of the debtor. *See Neshaminy Office Bldg.*, 63 B.R. at 803.

51. Moreover, it is not necessary for the court to conduct a truncated trial of the facts of the merits underlying the dispute. *See Grant Broad.*, 71 B.R. at 396; *see also In re A&C Prop.*, 784 F.2d 1377, 1384 (9th Cir.), *cert. denied*, 479 U.S. 854 (1986).

52. Rather, the court need only "canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." *See Neshaminy Office Bldg.*, 62 B.R. at 803, quoting *In re W.T. Grant Co.*, 4 B.R. 53, 69 (S.D.N.Y. 1977).

53. The Settlement reached by the Trustee clearly falls within the range of reasonableness for purposes of satisfying Rule 9019 criteria. In the present case, the Settlement Agreement is fair, reasonable, and in the best interest of the estate. See Certification of John Hargrave in Support of Motion.

54. The Trustee has engaged in protracted litigation for seven (7) years, and the dispute between the Parties involves numerous complex issues and defenses.

55. Not only would the continuation of the litigation against the Settling Defendants be costly and time consuming for the Parties, there are uncertainties in connection with future

litigation, including the potential for appeals, which could delay the final determination of the claims against the Settling Defendant for a significant period of time.

56. The Parties to the Settlement Agreement spent countless hours in negotiations, and reviewed numerous documents in order to resolve all issues between them.

57. The Settlement Agreement resolves the claims against the Parties to the Settlement Agreement with certainty.

58. The settlement falls within a reasonable range of litigation possibilities and preserves the Debtor's causes of action against non-settling defendants, and potential parties.

59. In exercising his business judgment, the Trustee has determined that the Settlement is in the best interest of the Debtor's estate and its creditors and that the uncertainly of continued motion practice and trial will increase the burdens on the Debtor's estate. Id.

60. The bankruptcy court need only canvas the issues between the Trustee and Settling Defendants to determine that the Settlement does not fall below the lowest point in the range of reasonableness, and that the Settlement Agreement should be approved pursuant to Rule 9019 and Section 105 of the Bankruptcy Code.

## V. CONCLUSION

WHEREFORE the Trustee prays this that this Honorable Court enter an order in the form attached approving the Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019, permitting the Trustee to execute same and to proceed to effectuate same, including the granting of any releases, and providing such other and further relief as the court deems just and equitable.

Dated: July 6, 2021                    By: */s/ Edmond M. George*
                                            Edmond M. George, Esquire
                                            OBERMAYER REBMANN MAXWELL & HIPPEL LLP

4833-7238-4752.v1-7/6/21

1120 Route 73, Suite 420
Mount Laurel, NJ  08054
*Special Counsel to the Chapter 7 Trustee,*
*John W. Hargrave*